

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

LORRAIN ORTIZ,

                Plaintiff,

    - against –

MONTEFIORE HOSPITAL and 1199 SEIU
UNITED HEALTHCARE WORKERS EAST,

                Defendants.

**MEMORANDUM
DECISION AND ORDER**
18-CV-4857 (AMD) (LB)

---------------------------------------------------------------

**ANN M. DONNELLY**, United States District Judge:

On August 23, 2018, the *pro se* plaintiff filed an employment discrimination action under Title VII of the Civil Rights Act of 1964 against Montefiore Hospital and 1199 SEIU United Healthcare Workers East, the union to which the plaintiff belonged. On September 7, 2018, I dismissed the plaintiff's complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B), and granted her 30 days to file an amended complaint. The plaintiff filed an amended complaint on October 3, 2018, which the defendants move to dismiss. (ECF Nos. 11, 17.) For the reasons discussed below, the motions to dismiss are granted.

### BACKGROUND[1]

The plaintiff worked at Montefiore Hospital from September of 2014 until July of 2017

---

[1] All facts are taken from the amended complaint and the plaintiff's affirmation in opposition to Montefiore's motion to dismiss. (ECF Nos. 5, 23.) "[A]lthough courts generally will not accept factual allegations raised for the first time in opposition to a motion to dismiss, some courts have construed the mandate to read a *pro se* plaintiff's papers liberally as allowing for consideration of such allegations." *Guity v. Uniondale Union Free Sch. Dist.*, No. 15–CV–5693, 2017 WL 9485647, at *1 (E.D.N.Y. Feb. 23, 2017), *report and recommendation adopted*, No. 15–CV–5693, 2017 WL 1233846 (E.D.N.Y. Mar. 31, 2017) (internal quotation marks and citation omitted) (collecting cases).

1

as a patient transporter.[2] She alleges that the defendants discriminated against her because she is Hispanic and a woman; "[m]ost of [the plaintiff's] coworkers in Patient Logistics were African American." (ECF No. 5 at 5, 10–12.)[3] The plaintiff claims that the defendants' alleged discrimination resulted in the "[t]ermination of [her] employment," and the "failure to . . . secure [her] safety." (*Id.* at 4.)

According to the plaintiff, her supervisor Craig Wright and her co-worker Virginia Andre, both of whom are "Black/Jamaican," discriminated against her because of her race. (ECF No. 23 at 2–3.) The plaintiff alleges that Ms. Andre told her that her pants were "too tight," made fun of her because she could not afford a personal trainer, and looked "disfavorably on" the plaintiff's poster of Hostos College, "a predominantly Hispanic community college in the Bronx." (*Id.* at 2.) The plaintiff claims that these "discriminatory remarks about [her] appearance and economic status . . . demonstrated [Ms. Andre's] racial animus." (*Id.*) The plaintiff asked Mr. Wright three times to transfer her to a different shift or location and "complained . . . about Ms. Andre's discriminatory treatment." (*Id.* at 3.) Mr. Wright "ignored [her] complaints and denied [her] a transfer" allegedly because of his favoritism of "Black/Jamaican coworkers, including Ms. Andre." (*Id.*) The plaintiff also alleges that Mr. Wright "filed at least two false claims about [the plaintiff's] performance." (ECF No. 5 at 10.)

The plaintiff also asserts that Ms. Andre "physically attack[ed]" her on June 30, 2017; she dropped a heavy bag on the plaintiff's foot and hit her in the leg with the bag. (*Id.* at 9, 12.) When the plaintiff then told Ms. Andre that it seemed like she "want[ed] to start some problems

---

[2] In her affirmation, the plaintiff states that she worked at Montefiore from September 2014 through July 2017 (ECF No. 23); in her Amended Complaint she alleges that she started working at Montefiore on November 25, 2014 and was terminated on June 30, 2017. (ECF No. 5.)

[3] The page numbers correspond to those generated by the Court's Electronic Court Filing system, and not the document's internal pagination.

with [the plaintiff]," Ms. Andre suggested that they "go outside and fight." (*Id.*) The plaintiff left because she was "scared." (*Id.*) As she walked out of the room, Ms. Andre allegedly "called [her] a bitch" and "kick[ed] the door" as it was closing behind the plaintiff. (*Id.*) The plaintiff went to the 210th Street hospital entrance to speak with a security guard, who told her to stay by the entrance. (*Id.*) At that point, the plaintiff called "Dennis," one of her supervisors,[4] "to tell him what had happen[ed]" and that she could not "work like this." (*Id.*)

The plaintiff was fired, but gives two different accounts of the termination. In her Amended Complaint, she claims that Frank Camacho, her supervisor after Mr. Wright left the hospital, told her to go home. (ECF No. 5 at 11.) About a week after the fight, "Dennis" told her to return to work, but when she returned to the hospital, Mr. Camacho fired her. (*Id.*) The plaintiff says that Mr. Camacho terminated her because of "racial animus against Hispanic females, and in retaliation" for her complaint about Ms. Andre's assault. (*Id.*)

In her opposition to this motion, however, the plaintiff claims that it was Mr. Wright, not Mr. Camacho who sent her home after the incident. (ECF No. 23 at 3.) She further alleges that while she was on leave, Montefiore informed her that she had been fired. (*Id.*) When she went to the hospital to meet with Human Resources, a woman told the plaintiff "that Ms. Andre was Mr. Wright's 'favorite.'" (*Id.*)

The plaintiff also claims that the Union "did not support [her] after [she] was terminated," "fail[ed] to represent [her]," and "did not defend [her] or afford [her] the process [she] was due under the Collective Bargaining Agreement." (*Id.* at 4, 11.) She received a Right to Sue letter from the Equal Employment Opportunity Commission on June 27, 2018. (*Id.* at 6, 13.)

---

[4] In her opposition, the plaintiff alleges that "Dennis" is "the security guard," not her supervisor. (ECF No. 23 at 3.)

3

The plaintiff brings claims under the Labor Management Relations Act, the National Labor Relations Act, Title VII of the Civil Rights Act of 1964, and the New York City Human Rights Law. (*Id.* at 3–4.) The plaintiff says that she did not work for 15 months after she was fired, and now has "a temp-to-permanent job as a coordinator at New York University Hospital." (*Id.* at 6; ECF No. 23 at 5.) The plaintiff seeks $500,000 in damages "for being wrongfully fired" and "suffering." (*Id.* at 8.)[5]

## DISCUSSION

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At the pleading stage, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations in the complaint." *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Similarly, a complaint fails to state a claim "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Because a *pro se* complaint is held to less stringent standards than a pleading drafted by an attorney, and the Court must read a *pro se* complaint liberally and interpret it to raise the strongest arguments it suggests. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191–93 (2d Cir. 2008). Where a liberal reading of the pleading "gives any indication that a valid claim might be stated," the Court must grant leave to amend it at least once. *See Cuoco v. Moritsugu*, 222 F.3d

---

[5] In her Amended Complaint, the plaintiff sought to be reinstated to her position at Montefiore (*id.*); she withdrew that request in her opposition (ECF No. 23).

4

99, 112 (2d Cir. 2000) (quotation marks and citation omitted).

The plaintiff brings claims under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the New York City Human Rights Law. (ECF No. 5 at 3–4.) In her opposition, the plaintiff withdrew her LMRA and NLRA claims against the Union (ECF No. 23 at 1); these claims against the Union are dismissed.

The plaintiff's Title VII claims are also dismissed. Title VII prohibits an employer from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To state a discrimination claim under Title VII, "a plaintiff must plausibly allege that (1) the employer took adverse action against [her] and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86–87 (2d Cir. 2015) To survive a motion to dismiss, the complaint "need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). "An inference of discrimination can arise from . . . the employer's criticism of the plaintiff's performance in [] degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group . . . ." *Id.* at 312 (quotation marks omitted).

The plaintiff claims that Montefiore discriminated against her based on her "gender/sex," but neither the Amended Complaint nor her opposition papers include any allegations about this claim. The plaintiff does not allege that she was treated differently because she is a woman; in fact, her claim that Mr. Wright favored another woman—Ms. Andre—over the plaintiff,

5

undermines her gender discrimination claim. The plaintiff's Title VII gender discrimination claim is dismissed.

The plaintiff also alleges that the defendant engaged in racial discrimination, but does not adequately plead circumstances giving rise to an inference of discrimination. The plaintiff alleges that Ms. Andre's behavior—her comments that the plaintiff's "pants [were] too tight," teasing the plaintiff because she could not afford a personal trainer, and her "disfavorable" view of the plaintiff's poster of a predominantly Hispanic community college—are evidence of Ms. Andre's racism; the plaintiff felt Ms. Andre based her actions on "stereotype[s] about Latin women." (*Id.* at 2.) But the plaintiff's "subjective belief that [s]he was discriminated against . . . does not sustain a . . . discrimination claim." *Meyer v. New York Office of Mental Health*, 174 F. Supp. 3d 673, 689 (E.D.N.Y. 2016); *see Perry v. Sony Music*, 462 F. Supp. 2d 518, 520 (S.D.N.Y. 2006) (Allegations that the plaintiff's supervisor "made him feel like a 'lackey'" and that "he was discriminated against because he is black" were "conclusory" and did not adequately plead discriminatory intent.). The plaintiff's racial animus allegations against her supervisors—that Mr. Wright[6] "favored [her] African American coworkers" and Mr. Camacho was "motivated" by "racial animus against Hispanic females"—are conclusory and insufficient. *See Yusuf v. Vassar Coll.*, 35 F.3d 709, 713–714 (2d Cir. 1994) ("[A] complaint consisting of

---

[6] Mr. Wright's failure to respond to the plaintiff's complaints about Ms. Andre's alleged discriminatory behavior does not raise an inference of racial animus. *See Qureshi v. Nassau Bd. of Co-op. Educ. Servs.*, No. 11–CV–2444, 2013 WL 1856657, at *2 (E.D.N.Y. May 1, 2013) (Allegation "that a school administrator responded inadequately to plaintiff's complaint about discriminatory comments made by a student" did not raise an inference of discriminatory intent.). Nor has the plaintiff adequately pled discriminatory intent by alleging that she was—aside from her race—similarly situated to Ms. Andre and her "African American coworkers," whom Mr. Wright supposedly favored. *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) ("To establish an inference of discrimination, a plaintiff must allege that [she] was similarly situated in all material respects to the individuals with whom [she] seeks to compare [herself]." (internal citation and quotation marks omitted)). The plaintiff's conclusory assertion that Ms. Andre is of "equal rank to [the plaintiff]" is insufficient. *See Humphries v. City Univ. of New York*, No. 13–CV–2641, 2013 WL 6196561, at *7 (S.D.N.Y. Nov. 26, 2013) (The plaintiff did not adequately plead that her favored counter was similarly situated where she did not allege her counterpart's "relevant experience and/or length of employment," "job responsibilities," or "qualifications.").

nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)." (internal quotation marks omitted)); *Ramos v. N.Y.C. Dep't of Corr.*, No. 05–CV–223, 2006 WL 1120631, at *7 (E.D.N.Y. Apr. 26, 2006) (dismissing Title VII claim because "[n]otwithstanding the liberal pleading standard in Title VII cases (especially for *pro se* litigants), the complaint as written does not describe any factual allegations to support the vague and conclusory assertion that the treatment he received by [his former employer] was a result of his race").

In addition, the plaintiff claims that Montefiore retaliated against her by refusing to transfer her and then firing her for reporting Ms. Andre's alleged discriminatory behavior and attack on her. (ECF No. 5 at 4.) "[F]or a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) 'because' [s]he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90; *see Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (A plaintiff alleging Title VII retaliation must allege that she took "action . . . to protest or oppose statutorily prohibited discrimination."). Neither of the alleged incidents of retaliation meets this standard.

Mr. Wright's refusal to transfer the plaintiff after she complained about "Ms. Andre's discriminatory treatment" was not an adverse employment action. While denials of transfers "may constitute an adverse employment action, it is only so when the transfer sought was not merely a lateral transfer, but, rather, was a transfer to an 'objectively better' position." *Santiesteban v. Nestle Waters N. Am., Inc.*, 61 F. Supp. 3d 221, 235 (E.D.N.Y. 2014) (quoting *Beyer v. Cty. of Nassau*, 524 F.3d 160, 164 (2d Cir. 2008)). The plaintiff sought transfers "to a different shift or a different location," but does not suggest that these transfers would have put

her in an "objectively better" position. Instead, the plaintiff seems to have been trying to avoid any interaction with Ms. Andre. Accordingly, the plaintiff's retaliation claim based on the denial of her transfer requests fails. *See Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) ("If a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer [an] adverse employment action." (quoting *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532–33 n.6 (10th Cir. 1998)).

The plaintiff's claim that Montefiore fired her for reporting the June 2017 incident with Ms. Andre is also dismissed because the plaintiff does not allege that she was fired for engaging in protected activity. The plaintiff does not claim that she reported the attack to oppose "statutorily prohibited discrimination." Instead, she alleges that she reported Ms. Andre for being "rude" and because "it seem[ed] like [Ms. Andre] wanted to start some problems with [the plaintiff]." (ECF No. 5 at 12.) These allegations do not state a claim for retaliation under Title VII. *See Kamrowski v. Morrison Mgmt. Specialist*, No. 05–CV–9234, 2010 WL 3932354, at *20 (S.D.N.Y. Sept. 29, 2010) (reporting mismanagement of coworkers unrelated to discrimination is not protected activity).

It is clear that the plaintiff did not get along with Ms. Andre or Mr. Wright, but allegations of strained workplace relationships, without more, are insufficient to sustain Title VII discrimination claims. *See Woods v. Enlarged City Sch. Dist. of Newburgh*, 473 F. Supp. 2d 498, 522 (S.D.N.Y. 2007), *aff'd sub nom. Woods v. Newburgh Enlarged City Sch. Dist.*, 288 F. App'x 757 (2d Cir. 2008) (dismissing Title VII claim where "there [wa]s no evidence of racial bias or animus," but was "substantial evidence suggesting that plaintiff's problems stemmed from abrasive relations with several of her coworkers." (citation omitted)); *Neratko v. Frank*, 31 F.

Supp. 2d 270, 284 (W.D.N.Y. 1998) ("Personal animosity is not the equivalent of ... discrimination and is not proscribed by Title VII. The plaintiff cannot turn a personal feud into a discrimination case by accusation."). Accordingly, the plaintiff's Title VII claims are dismissed.[7]

Because I dismiss the plaintiff's federal claims, I decline to exercise supplemental jurisdiction over the remaining New York City Human Rights Law claim. *Klein & Co. Futures. Inc. v. Bd, of Trade*, 464 F.3d 255, 262 (2d Cir. 2006) ("[W]here, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.").

## CONCLUSION

Accordingly, the defendants' motions to dismiss are granted, and the complaint is dismissed without prejudice. Montefiore asks that I dismiss the complaint with prejudice (ECF No. 18 at 9; ECF No. 24 at 7); however, a court dismissing a *pro se* complaint should grant leave to amend freely, if "a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (alterations and quotation marks omitted). Because the plaintiff is representing herself, I give her one final opportunity to cure the deficiencies discussed in this order. Specifically, the new complaint must make specific factual allegations as to acts evidencing discriminatory intent beyond what the plaintiff has already been pled in her previous complaints. If the plaintiff does not file an amended complaint by 30 days from the date of this order or if she files an amended complaint that does not cure the deficiencies discussed in this order, this case will be closed.

---

[7] I do not reach defendant Montefiore's arguments on improper venue and administrative exhaustion. (ECF No. 18 at 8–9; ECF No. 24 at 5, 7.)

**SO ORDERED.**

s/Ann M. Donnelly
_____
Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
April 29, 2019